UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

DANIEL LEE BEST,

       Plaintiff,

v.                       Case No. 2:09-cv-00646

WEXFORD HEALTH SOURCES,
SUBHASH GAJENDRAGAKAR[1],
DAVID BALLARD,
DAVID PROCTOR,
TERESA WAID,
CORRECTIONAL MEDICAL SERVICES,
JANE DOE,
BETTY HARDIN, and
JAMES RUBENSTEIN,

       Defendants.


PROPOSED FINDINGS AND RECOMMENDATION

On June 9, 2009, Plaintiff filed a Complaint alleging that he received inadequate medical care and attention with regard to a recurring rash while he has been incarcerated at three separate facilities operated by the West Virginia Division of Corrections, and further alleges that he has been denied appropriate treatment for several chronic illnesses while incarcerated at the Mount Olive Correctional Complex, where he is still incarcerated. (Docket sheet document # 1). Pending before the court are the following

---

[1] The correct spelling of this defendant's name appears to be Dr. Subhash Gajendragadkar. Mis-spellings in the parties pleadings and briefs will be corrected where appropriate herein, and the Clerk is directed to correct the mis-spelling on the docket sheet.

motions: a Motion to Dismiss by defendant Betty Hardin, or in the alternative, for a More Definite Statement (# 19), a Motion to Dismiss by defendants Wexford Health Sources, Inc., Dr. Subhash Gajendragadkar, and Dr. David Proctor (# 21), and a Motion to Dismiss by defendants James Rubenstein, David Ballard and Teresa Waid (# 23).

**FACTUAL BACKGROUND AND ALLEGATIONS IN THE COMPLAINT**

Allegations concerning Plaintiff's rash

According to his Complaint, Plaintiff has been continuously incarcerated since July 2006, beginning at Stevens Correctional Center ("SCC") in McDowell County, West Virginia.  While at SCC, Plaintiff alleges that he developed a rash which was initially isolated to his pelvic/groin area.  Plaintiff was examined by an unnamed health care provider at SCC (defendant Jane Doe), who allegedly diagnosed the rash as ringworm.  (# 1, Appx. A at 1). Defendant Doe gave Plaintiff a topical medication to treat the rash.

Plaintiff's Complaint further alleges that, after applying the topical medication to the infected area, the rash spread to "virtually every other part of the plaintiff's body."  Plaintiff was also having trouble breathing.  As a result of these developments, Plaintiff was taken to an off-site hospital for emergency treatment.  Plaintiff states that he was returned to the hospital twice more over the course of the next day.  During his

third hospital visit, steroids were intravenously administered to Plaintiff and the rash dissipated. Plaintiff was kept on Prednisone for approximately one month thereafter. (Id.)

The Complaint further alleges that Plaintiff was transferred to the Huttonsville Correctional Center ("HCC")[2] in June or July of 2008. Sometime thereafter, the rash re-appeared. (Id.) Plaintiff further alleges:

> Though the previous course of medication had proven only to suppress the visible symptoms of the rash, Huttonsville's medical staff under the direction of defendant David Proctor persisted in giving Prednisone to the plaintiff on approximately four occasions during his stay at Huttonsville, allowing only a few weeks to elapse between each course.

(Id., Appx. A at 1-2).

According to the Complaint, Plaintiff was transferred to the Mount Olive Correctional Complex ("MOCC") on January 29, 2009, where he remains incarcerated. (Id. at 2). The Complaint further states:

> The rash has continued to plague the plaintiff since that time and he has complained of the condition to medical staff there on numerous occasions. Despite Prednisone having conclusively been shown to be ineffective, defendant Dr. Subhash Gajendragadkar continued to treat only the symptoms of the rash without looking into its underlying cause. The plaintiff even went so far as to specifically request that he be tested for allergies to

_____

[2] HCC is located within the jurisdiction of the United States District Court for the Northern District of West Virginia. Nevertheless, because the majority of Plaintiff's complaint concerns conduct that arose within the Southern District of West Virginia, the undersigned will address all of the allegations contained in the Complaint.

see if an allergic reaction might be the cause of the rash.  However, no such diagnostic testing has been conducted and the plaintiff continues to suffer constantly from the untreated condition.

(Id. at 2).

Allegations concerning Plaintiff's other conditions

Plaintiff's Complaint states that he also suffers from several chronic conditions: HIV, hepatitis B, and hepatitis C.  The Complaint further alleges:

The plaintiff was under close care of a specialist prior to becoming incarcerated who prescribed a regimen of three medications which act in tandem with one another to treat the HIV.  The plaintiff had remained on these three medications throughout his incarceration. However, after he was transferred to Mount Olive, it seemed that medical staff were often neglecting to reorder one of the medications, causing the plaintiff to go without it and rendering the aggregate regimen much less effective.  The plaintiff would assert that defendant Gajendragadkar exhibited deliberate indifference to his serious medical needs by failing to enable the plaintiff's continuous use of all three medications in conjunction with one another.

When prescribing the regimen[], the plaintiff's specialist has impressed upon him the importance of taking all of these medications without missing a dose. However, because prison medical staff were failing to ensure that this was possible, the plaintiff filed an administrative grievance concerning the problem.  A mere matter of days after the grievance was submitted, in March of 2009, defendant Gajendragadkar ordered all of the plaintiff's medications discontinued, clearly in retaliation for his having filed the grievance.  This, too, evidences the defendant's deliberate indifference and desire to chill the exercise of his constitutional right to lodge complaints to prison officials.

After submitting another grievance (Grievance No. 09-MOCC-PA-52) but going without the medications for a period of five days, the plaintiff's specialist was allegedly contacted and defendant Gajendragadkar reordered the medications after confirming their

4

importance.   However, allowing the plaintiff to go
without medications for any length of time has inevitably
left his immune system weakened and rendered the
medications' renewed use less effective.

Finally, the plaintiff charges that the defendants
are exhibiting deliberate indifference by failing to
properly monitor his chronic illnesses such as checking
his viral load level, to provide any treatment whatsoever
for his Hepatitis, and to administer any preventative
medicine such as routine influenza and Hepatitis A
vaccinations.

(Id., Appx. A at 2-3).

## STANDARD OF REVIEW

In Bell Atlantic Corp v. Twombly, 550 U.S. 544, 570 (2007),

the Supreme Court observed that a case should be dismissed for

failure to state a claim upon which relief can be granted if,

viewing the well-pleaded factual allegations in the complaint as

true and in the light most favorable to the plaintiff, the

complaint does not contain "enough facts to state a claim to relief

that is plausible on its face."  While the complaint need not

assert "detailed factual allegations," it must contain "more than

labels and conclusions" or a "formulaic recitation of the elements

of a cause of action."  Id. at 555.

The Supreme Court elaborated on its holding in Twombly in

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), a civil rights case.

The Court wrote:

Two working principles underlie our decision in
Twombly.  First, the tenet that a court must accept as
true all of the allegations contained in a complaint is
inapplicable to legal conclusions.  Threadbare recitals
of the elements of a cause of action, supported by mere

5

conclusory statements, do not suffice. [Twombly, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted).  Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. * * *

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

## ANALYSIS

### A.   Deliberate indifference standard.

Federal courts are discouraged from interfering with the daily operations and administration of state correctional facilities. See Bell v. Wolfish, 441 U.S. 520, 562 (1979) (warning courts against becoming "enmeshed in the minutiae of prison operations"). Inquiry of federal courts into prison management must be limited to the issue of whether a particular administrative action violates the federal Constitution.  Id.  Plaintiff has alleged that each of the defendants has violated his Eighth Amendment right to be free from cruel and unusual punishment.

In 1976, the Supreme Court set the standard for evaluating whether a prisoner's Eighth Amendment right to be free from cruel and unusual punishment was violated based upon a prison healthcare provider's deliberate indifference (subjective component) to the prisoner's serious medical needs (objective component). Estelle v. Gamble, 429 U.S. 97 (1976). The Court found that deliberate indifference can be demonstrated in at least three different ways: "by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." 429 U.S. at 104-05 (citations omitted).

Addressing the objective component first, "serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Gaudreault v. Munic. of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990); Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1976)). The subjective component of "deliberate indifference" sets a high bar to recovery. In Iko, a case involving excessive use of pepper spray by correctional officers, the Fourth Circuit wrote:

> An officer is deliberately indifferent only when he "knows of and disregards" the risk posed by the serious medical needs of the inmate. Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994). * * *
>
> This court has identified two slightly different

7

aspects of an official's state of mind that must be shown in order to satisfy the subjective component in this context. First, *actual knowledge of the risk of harm* to the inmate is required. <u>Young v. City of Mt. Ranier</u>, 238 F.3d 567, 575-76 (4th Cir. 2001); *see also* <u>Parrish ex rel. Lee v. Cleveland</u>, 372 F.3d 294, 303 (4th Cir. 2004) ("It is not enough that the officer [] *should* have recognized it."). Beyond such knowledge, however, the officer must *also* have "recognized that *his actions were insufficient*" to mitigate the risk of harm to the inmate arising from his medical needs. <u>Parrish</u>, 372 F.3d at 303 (emphasis added).

In <u>Smith v. Smith</u>, ___ F.3d ___, No. 08-7139, 2009 WL 5066663 (4th Cir. Dec. 28, 2009), the Fourth Circuit ruled that an inmate stated a claim against a prison nurse for her alleged deliberate indifference to the plaintiff's serious medical need when she tore up the paperwork needed for him to receive treatment. Her actions delayed his treatment from May 20 to June 6. Delayed medical treatment can constitute a manifestation of deliberate indifference. <u>Estelle</u>, 429 U.S. at 104-05 n.11 (citing <u>Westlake v. Lucas</u>, 537 F.2d 857, 859 (6th Cir. 1976)).

**B.   Motion to Dismiss filed by defendant Betty Hardin.**

On July 30, 2009, defendant Betty Hardin (hereinafter "Hardin"), the Warden of the Stevens Correctional Center, filed a Motion to Dismiss or, alternatively, for a More Definite Statement (# 19) and a Memorandum of Law in support thereof (# 20)[3]. Hardin

---

[3] The undersigned notes that Plaintiff's Complaint also names a Jane Doe defendant, who is described as the unnamed health care provider at SCC who treated Plaintiff. (# 1 at 2, ¶ 9). Because the Jane Doe defendant has not been identified by Plaintiff, service of process on that defendant has not taken place, and no motion to dismiss has been filed on her behalf. Nevertheless, as

asserts that Plaintiff's Complaint fails to state a claim against her because Plaintiff has not alleged a sufficiently serious medical condition and, even if he could establish that the rash from which he suffered while incarcerated at the SCC was a serious medical need, he has also failed to establish that anyone at SCC was deliberately indifferent to his medical condition.

Based upon Hardin's Memorandum of Law (# 20 at 1), it appears that Plaintiff was incarcerated at the SCC from July of 2006 until approximately June or July of 2008.  Hardin's Memorandum notes that Plaintiff does not state when the rash about which he complains first appeared.  Thus, Hardin moves in the alternative for a more definite statement to establish the time period about which Plaintiff is complaining, so that it may be determined whether any of the allegations are barred by the applicable statute of limitations.  (# 20 at 2, 6-7).

Hardin's Memorandum addresses the Plaintiff's deliberate indifference claims as follows:

> The only allegations concerning Plaintiff's medical treatment at Stevens indicate that, upon development of his rash, he was treated by the facility's medical staff. (App. A. to Compl., p. 1.)  Once the treatment provided proved unsuccessful, he was transported off-site for emergency treatment on three occasions over two days. Id.  During the last off-site visit, Plaintiff was administered steroids intravenously, which, along with Prednisone, cured the rash.  Id.  It was not until his transfer to another facility that Plaintiff developed a

discussed, infra, the Complaint fails to state a claim upon which relief can be granted against defendant Jane Doe.

> new rash.  Id.  It is evident from Plaintiff's Complaint
> that he has not and cannot meet the elements necessary to
> state a claim for inadequate medical treatment.

(# 20 at 5).  Hardin further asserts that Plaintiff has only alleged a sporadically occurring rash and has not alleged that it "causes continuous severe pain."  Thus, Hardin contends that Plaintiff cannot establish that his rash presents a "substantial risk of serious harm [such as] loss of life or permanent disability." (Id.)(citing Green v. Rubenstein, 2009 WL 777935 *11 (S.D. W. Va. 2009) and Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998)).

Hardin further asserts that, even if Plaintiff could establish that his rash is a serious medical need, he has failed to show that Hardin, or anyone else at SCC, exhibited deliberate indifference to his serious medical need.  Hardin's Memorandum states:

> Conversely, upon notifying staff of his rash, he was
> treated by Stevens' in-house medical staff.  When the
> rash could not be resolved in-house, he was sent out of
> the jail to a private medical provider.  The private
> medical provider resolved the rash and Plaintiff was
> provided appropriate follow-up medical care by Stevens.
> The rash never reappeared at Stevens.  There are no
> allegations that equate to deliberate indifference in the
> treatment at Stevens.

(# 20 at 5).

Moreover, Hardin contends that, to the extent that Plaintiff has alleged that his rash was mis-diagnosed, as evidenced by its recurrence, a "complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid

claim of medical mistreatment." Estelle v. Gamble, 429 U.S. 98, 106 (1976). (Id. at 5-6). As noted by Hardin, the plaintiff in Estelle was seen by medical personnel seventeen times over the course of a 3-month period for back pain. The plaintiff asserted that "more should have been done by way of diagnosis and treatment, and suggest[ed] a number of options that were not pursued." Id. at 107. The Estelle Court found that "the question of whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent [a violation of plaintiff's constitutional rights.]" Id. at 108. (Id. at 6). Hardin further asserts:

> Just as in Estelle, Plaintiff here has failed to allege anything more than a possible misdiagnosis, which cannot state a claim for inadequate medical treatment. Stevens' personnel responded to Plaintiff's requests for medical treatment and ultimately worked to resolve his condition. All other paragraphs of Plaintiff's complaint relate to medical care after he was released from Stevens' custody and for which Stevens is not responsible. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted against defendant Hardin.

(Id. at 6).

In Webster v. Jones, 554 F.2d 1285 (4th Cir. 1977), the plaintiff, who had complained numerous times of eye problems and loss of vision, claimed that he was cursorily examined after his initial complaint, but never re-examined despite later complaints. The doctor claimed that he examined Webster several times, but

never diagnosed a medical problem with his eye.  Id. at 1286.

Subsequently, a specialist found that Webster's vision had

deteriorated to 20/400 and that he suffered from a detached retina

and iritis, and that his vision could not be restored.  Id.  The

Fourth Circuit found that, even if the doctor had been negligent in

failing to properly diagnose or treat Webster, negligence is not

sufficient to demonstrate deliberate indifference to a serious

medical need and, thus, Webster's allegations did not constitute a

cognizable constitutional claim.  See also, Johnson v. Quinones,

145 F.3d 164, 168 (4th Cir. 1998).

Likewise, disagreements between a health care provider and the

inmate over a diagnosis and the proper course of treatment are not

sufficient to support a deliberate indifference claim, and

questions of medical judgment are not subject to judicial review.

Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v.

Sheffer, 528 F.2d 318, 319 (4th Cir. 1975).  As noted by the Fourth

Circuit, an inmate is not entitled to unqualified access to health

care and treatment may be limited to what is medically necessary

and not "that which may be considered merely desirable" to the

inmate.  Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977).

Plaintiff did receive responsive treatment from the medical

staff at SCC for his rash, and was sent off-site to a hospital

where he received more comprehensive treatment.  Based upon the

treatment provided, Plaintiff's rash resolved itself during his

12

time at SCC.  Plaintiff's Complaint alleges nothing more than a disagreement with his course of treatment because the rash has re-occurred at other times, and can demonstrate nothing more than negligence against the health care provider at SCC who may have mis-diagnosed his rash as ringworm.

Although not specifically addressed by Hardin in her motion, it is well-settled that prison officials are entitled to rely upon the professional judgment of trained medical personnel.  <u>Miltier v. Beorn</u>, 896 F.2d 848, 854 (4th Cir. 1990); <u>Shakka v. Smith</u>, 71 F,3d 162, 167 (4th Cir. 1995).  Thus, to establish a claim of deliberate indifference against non-medical prison personnel, a plaintiff must demonstrate that the official was personally involved in the treatment or denial of treatment, or that they deliberately interfered with the treatment, or that they tacitly authorized or were indifferent to the medical provider's misconduct.  <u>Miltier</u>, 896 F.2d at 853.  Plaintiff has made no such allegations against Hardin in his Complaint.

Plaintiff has not demonstrated that the defendants from SCC showed a deliberate indifference to his medical condition and, thus, Plaintiff cannot meet the subjective element of an Eighth Amendment claim.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Complaint fails to state a claim upon which relief can be granted against defendants Hardin and Jane Doe.

**C.   Motion to Dismiss filed by defendants Wexford Health Sources, Inc., Dr. Subhash Gajendragadkar, and Dr. David Proctor.**

On July 30, 2009, defendants Wexford Health Sources, Dr. Subhash Gajendragadkar (hereinafter "Dr. Subhash") and Dr. David Proctor (collectively referred to as "the Wexford Defendants") filed a Motion to Dismiss (# 21) and a Memorandum of Law in support thereof (# 22).  The Motion and Memorandum of Law first assert that Wexford Health Sources Inc. (hereinafter "Wexford") is not a "person" as defined under section 1983.  (Id. at 1).  The Memorandum of Law further asserts that the Complaint makes no direct claims against Wexford concerning its official policies or customs, and appears to be attempting to hold Wexford liable only under a theory of respondeat superior as the employer of Drs. Subhash and Proctor.  (Id. at 1-2).

Concerning Dr. Proctor, who was the doctor who treated Plaintiff at HCC, the Memorandum of Law asserts that the facts alleged by Plaintiff in his Complaint do not demonstrate that Dr. Proctor was deliberately indifferent to Plaintiff's medical needs concerning his rash.  The Memorandum of Law states:

> In examining the allegations of the Complaint and the appendix attached thereto, it is clear that Dr. Proctor only worked at the Huttonsville Correctional facility.  According to the Complaint and its Appendix A, the prisoner was transferred to Huttonsville in June or July of 2008.  The rash of which the plaintiff complains developed prior to Huttonsville.  According to plaintiff's Complaint, the application of steroids caused the rash to dissipate while he was at the Stevens Correctional Center.  When the rash reappeared at

14

Huttonsville, it was <u>treated</u> four (4) times with Prednisone. The prisoner was transferred January 29, 2009, to Mt. Olive Correctional Complex. Thus, for a period of approximately six (6) months, Dr. Proctor ordered that the plaintiff be treated on four (4) occasions with Prednisone for the rash. Those allegations are the only allegations against Dr. Proctor.

(<u>Id.</u> at 3).

Dr. Proctor further argues that, notwithstanding his assertion that Plaintiff's rash was not a serious medical need, the facts do not establish that the treatment provided by Dr. Proctor was "so grossly incompetent, inadequate or excessive to shock the conscience or to be intolerable to fundamental fairness." <u>Miltier v. Beorn</u>, 896 F.2d 848, 851 (4th Cir. 1990). Dr. Proctor further contends that Plaintiff merely disagrees with the course of treatment he received for his rash, which does not rise to the level of a constitutional violation. <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985). (<u>Id.</u> at 2-3).

Concerning Dr. Subhash, the Memorandum of Law asserts the same arguments as those for Dr. Proctor, adding:

The Complaint alleges that the patient was moved to the [MOCC] in January 2009. Again, the plaintiff complains of a rash. Again, defendants would contend that a rash does not rise to the level of a serious medical need which would significantly affect an individual's daily life activities or conditions which cause pain, discomfort or a threat to good health. However, the Complaint again alleges that he has received treatment from Dr. [Subhash] while at [MOCC]. The plaintiff, again, disagrees with the course of treatment. As cited above, such disagreement does not support a claim of cruel and unusual punishment.

(# 22 at 4). The section of the Memorandum of Law concerning the

15

liability of Dr. Subhash also addresses Plaintiff's allegations concerning his treatment for HIV and hepatitis, since those allegations are only directed at Plaintiff's treatment while at MOCC.  The Memorandum states:

> No matter how the plaintiff characterizes the treatment, it is clear from the allegations of the Complaint that Dr. [Subhash] has treated the plaintiff for HIV and, at the time of the filing of the Complaint, was administering the drugs in a manner with which even the plaintiff agreed.  When stripped of the wild allegations and hyperbole, the facts shown in the Complaint clearly state that Dr. [Subhash] has prescribed the necessary medications.
>
> In the last paragraph of Appendix A, the plaintiff makes a general allegation regarding failure to check his viral load level, to provide treatment for hepatitis and to administer any preventative medicine such as routine influenza and hepatitis A vaccinations.  Without regard to whether any of these allegations are factually correct, there are no facts alleged in the Complaint to show that any of the foregoing items are medically necessary, that said items constitute serious medical conditions and, more importantly, what harm, if any, plaintiff has suffered as a result of the allegations.

(Id. at 5).

Plaintiff's Response addresses the liability of Dr. Proctor as follows:

> When the plaintiff was transferred to Huttonsville the rash again surfaced.  Rather than conducting an appropriate inquiry in effort to determine the proximate cause of the rash, Proctor, Huttonsville's attending physician, simply continued administering Prednisone to the plaintiff - a course which had previously proven to be ineffective at treating the underlying cause of [the] rash, only temporarily suppressing the itching sensation.  Proctor doggedly persisted in "treating" the rash not once, but four times with the same medication, despite it being known to be ineffective.

16

(# 27 at 7).  Plaintiff addresses the liability of Dr. Subhash as follows:

> Sadly, when the plaintiff was transferred to [MOCC] this dogged persistence continued, with Defendant Subhash again prescribing the ineffective medication Prednisone. However, this is perhaps the least life-threatening conduct this defendant has exhibited toward the plaintiff.  The plaintiff has also been diagnosed as having HIV and hepatitis.  *Appendix A to Complaint, at 2.* An HIV specialist had placed the plaintiff on a combination of medications to treat that disease, which the plaintiff had remained on throughout his incarceration.  *Id.*  After the plaintiff's arrival at [MOCC] he was not provided all three of the medications continuously, with one of them frequently being neglected to be renewed.  *Id.*  Because this dereliction rendered the plaintiff's treatment less effective, and thus the underlying condition more dangerous, the plaintiff filed a grievance against Subhash as the individual whose responsibility it is to ensure that he receives the needed medication.  *Id.*, at 3.  Rather than apologizing to the plaintiff and assuring him that appropriate steps would be taken to ensure that he receives the medications without interruption in the future, Subhash responded to the plaintiff's complaint by unilaterally discontinuing all of the plaintiff's medications without cause.  *Id.* This action reeks not only of constitutionally inadequate medical care, but also of retaliation for having filed the grievance.

(Id. at 7-8).

Plaintiff argues that the Wexford Defendants' dogged persistence in providing him the same treatment, which he asserts was ineffective because his rash continued to reappear, constituted deliberate indifference.  Plaintiff cites Greeno v. Daily, which states in pertinent part:

> [T]he defendants' contention that Greeno's claim failed because he received *some* treatment overlooks the possibility that the treatment Greeno did receive was "so blatantly inappropriate as to evidence intentional

17

> mistreatment likely to seriously aggravate" his condition. [Citation omitted]. We think a factfinder could infer as much from the medical defendants' obdurate refusal to alter Greeno's course of treatment despite his repeated reports that the medication was not working and his condition was getting worse.

414 F.3d 645, 654 (7th Cir. 2005). (Id. at 7).

The Wexford Defendants' reply brief reiterates that Plaintiff's disagreement with his course of treatment does not rise to the level of an Eighth Amendment violation. (# 33 at 1).

The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977)(emphasis added). It is arguable that Plaintiff's rash does not rise to the level of a serious medical need, except possibly for the time period during which he was having trouble breathing, which occurred and was sufficiently treated while Plaintiff was at SCC.

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff has not demonstrated that Drs. Proctor and Subhash exhibited a deliberate indifference to his medical condition concerning the rash. Thus, Plaintiff cannot meet the subjective element of an Eighth Amendment claim on that basis.

Turning to Plaintiff's claim that Dr. Subhash was deliberately indifferent to his serious medical needs concerning his HIV treatment, and that Dr. Subhash retaliated against Plaintiff for

18

filing a grievance concerning his failure to receive his necessary HIV medications, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Complaint does state a claim against Dr. Subhash in both of these respects.

Plaintiff alleges that, at least for a period of time, he was not receiving the necessary medications for treatment of his HIV, which is obviously a serious medical need. Plaintiff alleges that, based upon this conduct, Dr. Subhash exhibited deliberate indifference to his serious medical needs. (# 1, Appx. A at 7). Dr. Subhash has asserted that, by the time the Complaint was filed, Plaintiff was receiving the necessary medications. (# 22 at 5). The undersigned proposes that the presiding District Judge **FIND** that Plaintiff has sufficiently stated a claim of deliberate indifference to his serious medical needs concerning his HIV treatment by Dr. Subhash, that the allegations are sufficient to survive a motion to dismiss, and that this claim should go forward.

Plaintiff has also alleged that Dr. Subhash withheld or discontinued all of Plaintiff's medications after Plaintiff filed a grievance concerning his HIV treatment, and that this conduct was in retaliation for Plaintiff's filing of the grievance, designed to chill the exercise of Plaintiff's constitutional right to lodge complaints to prison officials. (# 1, Appx. A at 8).

Retaliation claims are analyzed under the First Amendment. The elements of a retaliation claim are: (1) that the plaintiff

19

engaged in protected activity; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in the conduct; and (3) that the adverse action was motivated, at least in part, by the plaintiff's protected conduct.  See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977).

> Under Mt. Healthy and its progeny, an otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech. [Footnote omitted].  This doctrine demonstrates that, at least, where the First Amendment is concerned, the motives of government officials are indeed relevant, if not dispositive, when an individual's exercise of speech precedes government action affecting that individual. [Footnote omitted].

Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997).

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff has sufficiently stated a First Amendment retaliation claim against Dr. Subhash, and that this claim should go forward.

Plaintiff's Complaint does not contain specific allegations that Wexford has a policy or custom that resulted in any violation of his constitutional rights.  In fact, the only mention of Wexford at all in Plaintiff's Complaint is in Section I, paragraph 3, which states that "Defendant Wexford Health Sources is a corporation doing business within the jurisdiction of this Court, and was at times relevant hereto, contracted by the West Virginia Division of Corrections to provide medical services to prisoners committed to

20

the agency's custody."   (# 1 at 2).   Paragraphs 4 and 6 further state that Drs. Subhash and Proctor were employed by Wexford. (<u>Id.</u>)   Only after the Wexford Defendants' Motion to Dismiss asserted that Plaintiff could not state a claim against Wexford because he had not alleged that Wexford had an official policy or custom that resulted in the violation of Plaintiff's constitutional rights, did Plaintiff respond as follows:

> [I]t is the plaintiff's position that the official policies or customs of defendant[] Wexford Health Sources, Inc. . . . have proximately caused the deprivation of his right to receive adequate medical care.   In part, this is evidenced by the fact that the plaintiff received the same deliberately indifferent medical care at several different facilities, showing that the official policy or custom is to give prisoners this despicable type of medical attention.   It is the plaintiff's contention that this is a result of the corporation['s] official policy or custom of maximizing profit by rendering the least expensive course of treatment, and rendering ineffective treatment simply to appease complaining prisoners rather than appropriately (and when necessary, extensively) investigating and treating prisoners' illnesses.   As did Judge Johnson [sic; Johnston], the plaintiff herein respectfully asserts that the Court should find that his allegations are sufficient to state a claim against Wexford . . . .

(# 27 at 9).   Plaintiff further asserts:

> All the more may Wexford be held responsible for the plaintiff's constitutional injuries.   Not only did their official corporate policies or customs proximately cause the deplorable level of medical "care" visited upon the plaintiff, but they knew of and created a specific risk in hiring Defendant Subhash who, "[i]n 1996 . . . was indicted on two counts of mail fraud stemming from alleged over-billing of patients at his medical practice."   <u>United States of America v. Subhash Gajendragadkar, M.D.</u>, 1998 U.S. App. LEXIS 11656 (4th Cir. June 3, 1998)(unpublished).

While Subhash's criminal convictions were vacated by the district court, and the district court's order doing so was affirmed by the circuit court [footnote omitted], he nevertheless faced valid sanctions from the West Virginia Board of Medicine ("the Board") for his admitted violation of medical ethics. Subhash agreed to the entrance of a Consent Order by the Board on November 20, 1996, wherein his license to practice medicine and surgery (License No. 12558) was suspended for a period of one year, from November 18, 1996 until November 18, 1997. The Board concluded, as a matter of law, that probable cause existed "to substantiate charges of disqualification from the practice of medicine due to violations . . . relating to conviction of crimes which are felonies and directly related to the practice of medicine, filing false reports, and unprofessional conduct." *Consent Order entered November 20, 1996,* at 2. Subhash's license remain[ed] on probationary status until December 18, 1999, and the Consent Order remains a permanent [part] of his record with the Board. Importantly to the other defendants' culpability, paragraph four of said Consent Order provides:

> Dr. Subhash shall provide a copy of this Order to any employer or health care or medical facility where Dr. Subhash is practicing medicine . . .

*Consent Order entered November 20, 1996,* at 5. Thus, it is a near certainty that not only Wexford Health Sources, but also Defendants Ballard and Rubenstein knew of Subhash's history of violating acceptable standards of professional conduct. In hiring him and allowing him to diagnose and treat the plaintiff and others similarly situated without supervision and accountability, the foregoing defendants tacitly authorized the constitutional violations alleged by the plaintiff. The plaintiff would assert that Wexford Health Sources has an official corporate policy or custom of readily employing individuals with such questionable backgrounds, who might settle for lower salaries and thus maximizing the company's profit margin[] at the expense of its captive clientele. In support of this allegation, the plaintiff would direct the Court's attention to the numerous other complaints filed with appropriate licensing boards against Wexford employees, including Subhash and, upon information and belief, Proctor, a doctor of osteopathy.

(Id. at 10-12).

Wexford's Reply contends that the assertions made in Plaintiff's Response are not supported by the Complaint and the Statement of Facts.  The Reply further states:

> There are certainly no allegations in the Complaint regarding any corporate policy of Wexford nor do the allegations in the Complaint constitute any claim of corporate policy on the part of Wexford.  In addition, the bold statements in the memorandum do not constitute sufficient facts to set forth any allegations of corporate policy on the part of Wexford.

(# 33 at 2).

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Complaint makes no allegations against Wexford Medical Sources, Inc., and his attempts to bolster or remedy the deficiencies of his Complaint in his response are nothing more than speculative, bare assertions and conclusions unsupported by facts.  Accordingly, under the standard set forth by the Supreme Court in Twombly and Iqbal, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Complaint fails to state a claim upon which relief can be granted against Wexford Health Sources, Inc.

Finally, Plaintiff's Complaint generally alleges that "the defendants have exhibited deliberate indifference by failing to properly monitor his chronic illnesses such as checking his viral load level, to provide any treatment whatsoever for his Hepatitis, and to administer any preventative medicine such as routine

influenza and Hepatitis A vaccinations." (# 1, Appx. A at 8). The
Wexford Defendants have asserted that Plaintiff has not established
facts to support a finding that the foregoing are medically
necessary or that Plaintiff has suffered as a result of the alleged
failure to provide this treatment. (# 22 at 5).

While a diagnosis of hepatitis may be a serious medical need,
Plaintiff has not sufficiently alleged facts to support a claim of
deliberate indifference concerning treatment for his hepatitis. In
fact, all of the allegations contained in this paragraph are
nothing more than labels and conclusions, unsupported by well-
pleaded facts. Accordingly, under the standard set forth by the
Supreme Court in Twombly and Iqbal, the undersigned proposes that
the presiding District Judge **FIND** that Plaintiff's Complaint fails
to state a claim upon which relief can be granted against the
Wexford defendants on this basis.

> **D.   Motion to Dismiss filed by defendants James Rubenstein,
> David Ballard and Teresa Waid.**

On August 3, 2009, defendants James Rubenstein, the
Commissioner of the West Virginia Division of Corrections, David
Ballard, the Warden at MOCC, and Teresa Waid[4], then Warden at HCC,
filed a Motion to Dismiss (# 23) and a Memorandum of Law in support
thereof (# 24). In their Memorandum of Law, these defendants note
that the Complaint makes no specific factual allegations against

---

[4]   Defendant Waid is deceased.

them.  (# 24 at 1).  The Memorandum further asserts that these defendants are entitled to qualified immunity concerning Plaintiff's Eighth Amendment claims against them "because Mr. Best fails to allege any facts that show they acted with deliberate indifference with regard to his health or safety."  (Id. at 3).

Defendants Rubenstein, Ballard and Waid (hereinafter the DOC Defendants") are supervisory employees of the West Virginia Division of Corrections, who had no direct involvement in Plaintiff's medical treatment.  Prior to the Supreme Court's ruling in Farmer v. Brennan, 511 U.S. 825, 834 (1994), the Fourth Circuit established "the principle that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates."  Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984).  A named supervisor may be liable for acts of subordinates if the official was aware of a pervasive, unreasonable risk of harm from a specified source and failed to take corrective action as a result of his deliberate indifference or tacit authorization of the offensive practice.  Id. at 373.

Liability may attach where "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care."  Id. at 372.  The relevant inquiry is whether the defendants acted "wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm."  Moore v. Winebrenner,

927 F.2d 1312, 1315 (4th Cir. 1991).  However, the Fourth Circuit
has held that supervisory prison officials are entitled to rely on
the professional judgment of trained medical personnel.  <u>See</u>
<u>Miltier</u>, 896 F.2d at 854.  Thus, prison officials fulfill their
duty by taking reasonable measures to ensure that an inmate
receives health care.  Even if the health care provider acts
negligently, there is no violation of the Eighth Amendment.

The DOC Defendants' Memorandum further states:

> These Defendants should be dismissed from this suit
> because Mr. Best does not allege that these Defendants
> deprived him of a basic human need, much less one that is
> sufficiently serious.   He does not advance any
> allegations that these Defendants are responsible for the
> alleged inadequate medical care.  Further, he does not
> allege that his medical condition was caused in any
> manner by any of these Defendants.  Lastly, Mr. Best's
> Complaint admits that he received and continues to
> receive treatment for the rash and HIV.
>
> * * *
>
> Mr. Best can prove no set of facts that will support
> a finding that these Defendants are not entitled to the
> protections of qualified immunity.  As such, these
> Defendants respectfully request that this court dismiss
> the Plaintiff's Complaint against them.

(# 24 at 4-5).

Plaintiff's Response asserts that a viable claim of
supervisory liability is stated when a plaintiff can demonstrate
(1) actual or constructive knowledge of a risk of constitutional
injury; (2) deliberate indifference to that risk; and (3) and
"affirmative causal link" between the supervisor's inaction and the
particular constitutional injury suffered.  <u>Shaw v. Stroud</u>, 13 F.3d

26

791, 798 (4th Cir. 1994).  (# 24 at 10).  Plaintiff's Memorandum
further states:

> The plaintiff avers that at trial he will be able to
> demonstrate the foregoing elements in a number of ways.
> For instance, at each of the Division of Corrections
> facilities encompassed by the complaint, the plaintiff
> filed administrative grievances concerning the inadequate
> medical attention he was receiving.  Wardens Teresa Waid
> and David Ballard, and Commissioner James Rubenstein were
> therefore aware of the plaintiff's serious medical needs
> but exhibited deliberate indifference by allowing him to
> languish in misery through their failure to hold medical
> staff accountable for their contractual obligation.

(Id.)  Plaintiff's Response further asserts that the DOC Defendants
are not entitled to qualified immunity, stating, "[a]s the
plaintiff has made allegations sufficient to establish supervisory
liability through the personal deliberate indifference of each of
the DOC defendants, so too their reliance upon qualified immunity
must fail."  (Id. at 12-13).

The DOC Defendants' Reply simply reiterates the arguments made
in their Memorandum of Law.  (# 32).

The undersigned proposes that the presiding District Judge
**FIND** that Plaintiff's Complaint does not allege any conduct by the
DOC Defendants sufficient to give rise to a violation of
Plaintiff's constitutional rights.  These defendants were entitled
to rely upon the judgments of the medical defendants concerning
Plaintiff's medical treatment, and Plaintiff's arguments that these
defendants were deliberately indifferent to Plaintiff's conditions
are unavailing.  Accordingly, the undersigned further proposes that

27

the presiding District Judge **FIND** that Plaintiff's Complaint fails to state a claim against defendants Rubenstein, Ballard and Waid.

**RECOMMENDATION**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge:

1.   **GRANT** the Motion to Dismiss filed by Betty Hardin (# 19-1), and also dismiss the Complaint against defendant Jane Doe;

2.   **DENY** the Motion for a More Definite Statement filed by Betty Hardin (# 19-2);

2.   **GRANT** the Motion to Dismiss filed by Dr. David Proctor and Dr. Subhash Gajendragadkar (# 21) concerning Plaintiff's deliberate indifference claim as it relates to his treatment for his rash, the failure to monitor Plaintiff's chronic illnesses, to treat his hepatitis, and to administer preventative vaccinations;

3.   **DENY** the Motion to Dismiss filed by Dr. Subhash Gajendragadkar (# 21) concerning Plaintiff's deliberate indifference claim as it relates to Plaintiff's treatment for HIV, as well as Plaintiff's retaliation claim;

4.   **GRANT** the Motion to Dismiss filed by Wexford Health Sources, Inc. (# 21);

5.   **GRANT** the Motion to Dismiss filed by James Rubenstein, David Ballard and Teresa Waid (# 23); and

6.   Leave this matter referred to the undersigned for additional proceedings and submission of proposed findings and

28

recommendation for disposition concerning the remaining claims.

The parties are notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections), and then three days (mailing), from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to the opposing parties and Chief Judge Goodwin.

29

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff and counsel of record.

_____February 22, 2010_____
              Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge