IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

DANIEL LEE BEST,

      Plaintiff,

v.                                    Case No. 2:09-cv-00646

DR. SUBHASH GAJENDRAGADKAR,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is the defendant Dr. Subhash Gajendragadkar's Motion for Summary Judgment (ECF No. 58). This matter is assigned to the Honorable Joseph R. Goodwin, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## RELEVANT PROCEDURAL HISTORY

On June 9, 2009, the plaintiff filed a Complaint alleging that he received inadequate medical care and attention with regard to a recurring rash while he has been incarcerated at three separate facilities operated by the West Virginia Division of Corrections, and further alleged that he has been denied appropriate treatment for several chronic illnesses (HIV and Hepatitis C) while

incarcerated at the Mount Olive Correctional Complex.[1]  (ECF No. 1).

On March 29, 2010, the presiding District Judge granted the motions to dismiss of all of the defendants, with the exception of two claims against Dr. Subhash Gajendragadkar (hereinafter "Dr. Subhash" or "the defendant").  (ECF No. 42).  The claims remaining before the court are: (1) that Dr. Subhash was deliberately indifferent to the plaintiff's serious medical needs by denying him necessary medications for treatment of HIV, and (2) that, after Plaintiff filed a grievance concerning the denial of his HIV treatment, Dr. Subhash discontinued all of the plaintiff's medications in retaliation for the plaintiff's filing of the grievance.  On April 1, 2010, the undersigned entered an Order setting deadlines for discovery and dispositive motions concerning these two remaining claims, and ordered that the plaintiff be provided a complete copy of his medical records.  (ECF No. 43).

On July 15, 2010, the defendant filed a Motion for Summary Judgment, with exhibits (ECF No. 58), and a Memorandum in support thereof (ECF No. 59).  After being granted an extension of time, and having been notified of his right and obligation to file a response to the defendant's Motion for Summary Judgment, pursuant to the holding in Roseboro v. Garrison, 528 F.2d 309 (4th Cir.

---

[1] Plaintiff is now incarcerated at the Huttonsville Correctional Center.

1975), the plaintiff filed a Response to the Motion for Summary Judgment, with accompanying exhibits, on January 21, 2011. (ECF No. 80). The defendant filed a Reply (ECF No. 81) on February 2, 2011. This matter is ripe for determination.

<u>**STANDARD OF REVIEW**</u>

In evaluating summary judgment motions, Rule 56 of the Federal Rules of Civil Procedure provides:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c)(2) (2009). Material facts are those necessary to establish the elements of a party's cause of action. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. <u>Id.</u> The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. <u>Overstreet v. Kentucky Cent. Life Ins. Co.</u>, 950 F.2d 931, 937 (4th Cir. 1991).

If the moving party meets this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c)(2); Id. at 322-23.

> [A]n opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

## STATEMENT OF UNDISPUTED FACTS

The plaintiff was transferred from the Huttonsville Correctional Center to the Mount Olive Correctional Complex (hereinafter "MOCC") on January 29, 2009. Physicians' Orders

4

dated the same date demonstrate that the plaintiff was prescribed Truvada, Lexiva and Norvir for treatment of HIV. (ECF No. 58, Ex. 1).

The defendant has also provided the plaintiff's Medication Administration Record (hereinafter "MAR") from January 29, 2009 through February 28, 2010. (Id., Ex. 2). The MAR indicates that the defendant prescribed the three HIV medications, Truvada, Lexiva and Norvir, for the plaintiff beginning on January 29, 2009, and that such treatment continued until February 28, 2010.[2] The MAR further indicates that the plaintiff was intermittently not administered all three of these drugs, and that he did not receive the three drugs at all between March 5, 2009 and March 10, 2009. (ECF No. 58, Ex. 2).

The defendant has also attached to his Motion for Summary Judgment a portion of the Physicians' Orders which contains the entries for March 5-10, 2010, the period during which the plaintiff's medications were discontinued. The first entry indicates that the three HIV medications were renewed on March 4, 2009 for a period of 210 days. This entry was signed off on by the defendant on March 5, 2009. (ECF No. 58, Ex. 3). The next entry indicates that the medications were discontinued (D/C) on March 6, 2009 at 12:50 pm because the viral load was negative for greater

---

[2] This is simply the last date of records produced by the defendant. To the undersigned's knowledge, it is not the last date that the plaintiff received treatment for HIV.

than one (1) year.  This entry was signed off on by the defendant on March 10, 2009.  (Id.)  The third entry in the Physicians' Orders indicates that the plaintiff would be re-started on all three medications for 210 days.  This entry was signed off on by the defendant on March 10, 2009.  (Id.)

The defendant has also provided portions of two laboratory reports dated December 31, 2007, and October 8, 2008, which indicate that HIV RNA was not detectable in the plaintiff's blood. (Id., Ex. 4).

A Progress Note of March 10, 2009, indicates that the plaintiff was concerned about stopping the HIV medications and that the doctor would consult with a specialist.  This Progress Note again refers to the plaintiff's negative HIV viral load for 1 ½ years.  (Id., Ex. 5).  The defendant subsequently consulted with an HIV specialist and determined that he should reinstate the plaintiff's HIV medications, despite the negative viral load for over one (1) year.  An addition to the Progress Note states that the medications were to be restarted.  (Id.)

The plaintiff's medical records further indicate that the plaintiff has had numerous blood tests performed in the time he has been incarcerated at MOCC, and that the MOCC medical staff is monitoring both his HIV and HCV RNA levels. (ECF No. 58, Exs. 6-9).

## **PLAINTIFF'S CLAIMS AND APPLICABLE LAW**

The plaintiff's Complaint alleges that he filed a grievance against the defendant because the medical staff was "often neglecting to reorder one of the medications, causing the plaintiff to go without it and rendering the aggregate regimen much less effective." (ECF No. 1 at 7). The plaintiff further alleges that, subsequently, the defendant discontinued the administration of all of the plaintiff's HIV medication in retaliation for his filing of such grievance. (Id. at 8). The plaintiff's Complaint further states "[t]his, too, evidences the defendant's deliberate indifference and desire to chill the exercise of his constitutional rights to lodge complaints to prison officials." (Id.) Thus, the plaintiff's Complaint alleges a retaliation claim that is governed by the First Amendment, and a claim of deliberate indifference to a serious medical need, which is governed by the Eighth Amendment. The undersigned will first address the showing the plaintiff must make concerning each claim.

### The retaliation claim

"The First Amendment grants the rights to free speech and to seek redress of grievances. These rights, to a limited extent, exist in a prison setting." Gullett v. Wilt, 869 F.2d 593 (4th Cir. 1989)(unpublished)(citing Johnson v. Avery, 393 U.S. 483 (1969). To state an actionable claim of retaliation, "a prisoner 'must establish these elements: (1) his speech was constitutionally

7

protected; (2) the inmate suffered adverse action such that the [] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." <u>Smith v. Mosley</u>, 532 F.3d 1270, 1276 (11th Cir. 2008).

Although the Fourth Circuit has not yet published an opinion concerning whether alleged retaliation by prison officials for filing of inmate grievances is protected by the First Amendment, a number of other Circuit Courts have so held. <u>See</u> <u>Fisher v. Neale</u>, 2010 WL 3603495 *8 (E.D. Va. Sept. 8, 2010)(slip opinion)(listing cases from other circuits in which the courts found that alleged retaliation based upon the filing of a grievance stated a claim). This court allowed the plaintiff's claim to survive a motion to dismiss on such basis.

<u>The deliberate indifference claim</u>

In 1976, the Supreme Court set the standard for evaluating whether a prisoner's Eighth Amendment right to be free from cruel and unusual punishment was violated based upon a prison healthcare provider's deliberate indifference (subjective component) to the prisoner's serious medical needs (objective component). <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976). The Court found that deliberate indifference can be demonstrated in at least three different ways: "by prison doctors in their response to the prisoner's needs or by

prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." 429 U.S. at 104-05 (citations omitted).

Addressing the objective component first, "serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Gaudreault v. Munic. of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990); Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1976)). The subjective component of "deliberate indifference" sets a high bar to recovery. In Iko, a case involving excessive use of pepper spray by correctional officers, the Fourth Circuit wrote:

> An officer is deliberately indifferent only when he "knows of and disregards" the risk posed by the serious medical needs of the inmate. Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994). * * *
>
> This court has identified two slightly different aspects of an official's state of mind that must be shown in order to satisfy the subjective component in this context. First, *actual knowledge of the risk of harm* to the inmate is required. Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001); *see also* Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) ("It is not enough that the officer [] *should* have recognized it."). Beyond such knowledge, however, the officer must *also* have "recognized that *his actions were insufficient*" to mitigate the risk of harm to the inmate arising from his medical needs. Parrish, 372 F.3d at 303 (emphasis added).

9

In Smith v. Smith, 589 F.3d 736 (4th Cir. 2009), the Fourth Circuit ruled that an inmate stated a claim against a prison nurse for her alleged deliberate indifference to the plaintiff's serious medical need when she tore up the paperwork needed for him to receive treatment.  Her actions delayed his treatment from May 20 to June 6.  Delayed medical treatment can constitute a manifestation of deliberate indifference.  Estelle, 429 U.S. at 104-05 n.11 (citing Westlake v. Lucas, 537 F.2d 857, 859 (6th Cir. 1976)).

## THE PARTIES' ARGUMENTS

By filing the alleged grievance on March 5, 2009 (hereinafter "the March 5 grievance"), the plaintiff contends that he engaged in activity protected under the First Amendment.  The plaintiff further asserts that adverse action was taken against him in the form of the discontinuation of his HIV medication the following day, March 6, 2009, because he filed the March 5 grievance.  The plaintiff claims that the defendant retaliated against him for filing the March 5 grievance, and further asserts that the defendant exhibited deliberate indifference to the plaintiff's serious medical needs by discontinuing his HIV medications.

The defendant's Motion, Memorandum in Support and other Response

In his Memorandum in Support of his Motion for Summary Judgment, the defendant states that he has not seen the March 5 grievance, and that the plaintiff has not established a time line

of the filing of the grievance and the alleged retaliation.  The
defendant, nevertheless, states that for the purpose of this
motion, it will be assumed that the plaintiff did file a grievance
in March of 2009 with respect to the defendant.  (ECF No. 59 at 7-
8).

The defendant further addresses the retaliation claim as
follows:

> The records clearly show that Dr. Subhash did not
> retaliate.  He based his decision to discontinue the
> three (3) HIV medications, which were due for renewal,
> upon his review of the medical records of Mr. Best.  That
> examination revealed that Mr. Best's laboratory results
> showed negative for viral load in excess of one (1) year.
> The lab reports which are submitted herewith clearly show
> the negative results circled.  The Progress Notes of
> March 10, 2009, (Exhibit 6) show that Dr. Subhash
> contacted a specialist when the patient was concerned
> about the discontinuance of the drug treatment.  Based
> upon this consultation, Dr. Subhash immediately
> reinstated the drug therapy and it has continued
> throughout the medical records as shown by the pharmacy
> records.  Those records show that Mr. Best received his
> medications on March 6, 2009, and began receiving them
> again on March 10, 2009.  Accordingly, a period of three
> (3) days passed without the medications.
>
> Even if Mr. Best could establish that Dr. Subhash
> retaliated against him (which is denied) or if Mr. Best
> could prove that Dr. Subhash was mistaken in his opinion
> that the medicines could be stopped, there is no proof
> that the interruption of three (3) days caused any damage
> to Mr. Best, or any exacerbation of his medical
> condition.  Such a claim is speculation on the part of
> Mr. Best.  There are no findings within the medical
> records to support such a claim.

(Id. at 8).

Concerning the deliberate indifference claim, the defendant
adds, "[i]f Dr. Subhash made an error in judgment when he

11

discontinued the medication he might be guilty of negligence; however, negligence on the part of Dr. Subhash does not rise to the level of deliberate indifference.  <u>Estelle</u>, *supra*." (<u>Id.</u> at 8-9). The defendant further states:

> The remainder of the plaintiff's claims against Dr. Subhash are simply unsupported by the evidence contained within the medical records.  The only other claim to survive the Motion to Dismiss was the plaintiff's allegation that Dr. Subhash did not treat him for HIV and withheld medications that he had otherwise been taking. The medical records submitted herewith clearly show that Dr. Subhash immediately ordered the appropriate medications when the plaintiff was transported to [MOCC] on January 29, 2009.  The Physicians Orders show the three (3) HIV medications.  The Medication Record show[s] that Dr. Subhash prescribed and ordered the medications. The medical records are conclusive that Mr. Best was prescribed and received the three (3) HIV medications on a regular basis.
>
> Any other allegations by Mr. Best that his HIV was ignored or not treated are simply misplaced.  Mr. Best is considered a chronically ill patient and has a specific protocol established for his care and treatment.  An example of that protocol has been attached as Exhibit 8, as well as the Physicians Orders of July 22, 2009 (Exhibit 9) which show the implementation of a variety of tests, laboratory and surgical, to follow and treat his HIV and hepatitis.  Mr. Best's allegations are simply incorrect and there is no genuine issue as to those allegations.

(<u>Id.</u> at 9).

The defendant asserts that the plaintiff's claim is merely a disagreement with his doctor over the proper course of treatment, which is not actionable under the Eighth Amendment.  (<u>Id.</u> at 9-10). The defendant further states:

> [The defendant's] actions were taken upon a considered medical opinion formulated by his review of laboratory

12

results.  After consultation with another physician, he reversed his course and re-instituted the medications. In other words, he responded to the patient's concerns and followed up on his decision.  His actions certainly do not rise to the level of a constitutional violation either by deliberate indifference or retaliation to the exercise of the First Amendment right.

(Id. at 10).

On December 30, 2010, in response to the undersigned's Order, the defendant filed a response providing the plaintiff and the court with "any authority upon which Defendant may rely to support his decision to discontinue any medications plaintiff was receiving during the time period of January 29, 2009, to June 9, 2009." This response (ECF No. 76) states in pertinent part:

In the Motion for Summary Judgment filed by [Dr. Subhash] the defendant has presented the undisputed facts that the medications were stopped because the viral load of the plaintiff had been negative for two years.  The medications were discontinued for a period of three days during which time [Dr. Subhash] discussed the matter with an infectious disease specialist, at the request of the plaintiff.  As a result of those discussions, the medications were reinstated.  The content of that discussion has not been introduced into the record for the reason that defendant did not want to raise any issues of fact.  The important fact is that [Dr. Subhash] had medical justification to discontinue the medication and follow up his decisions with a discussion with an infectious disease specialist.  It should be remembered that this is a case alleging deliberate indifference on the part of [Dr. Subhash] and/or retaliation.  Without discussing whether or not the plaintiff can show a causal relationship between the discontinuance of the HIV [medications] and time line of the filing of his grievance, it is clear that [Dr. Subhash] made notes in the records of his reasons for the discontinuance, and that he consulted with a specialist at plaintiff's request.  Submitted herewith are copies of abstracts of four studies and articles with relation to the discontinuance of antiviral therapy.

13

(Id. at 1-2).   The defendant attached four abstracts of studies, which the undersigned has reviewed.   The defendant's response further indicates that Dr. Subhash would rely upon the plaintiff's lab test results, and his own education and experience in making his decision to discontinue the HIV drugs.   (Id. at 3).

<u>The plaintiff's Response</u>

On January 21, 2011, the plaintiff filed a Response to the defendant's Motion for Summary Judgment (ECF No. 80).   The Response first takes issue with the fact that the evidence submitted by the defendant is unsworn and unauthenticated.   The plaintiff asserts that it is unacceptable evidence upon which to grant summary judgment.   (Id. at 1-2).

The plaintiff further asserts that, while he did receive his three HIV medications for the most part, "periodically one of those medications would be missing when the pills were dispensed."   (Id. at 5).   The plaintiff further states:

When Plaintiff questioned the missing medication, the nurse would say that it was "on order" and that it would be missing for "a few days."  (Pl's. Aff. ¶¶ 9-11.)

Plaintiff submitted a grievance on or about March 5, 2009, over the periodically missing medications. Plaintiff requested a copy of this grievance from the prison officials but has not received it.  (Pl's. Aff. ¶¶ 13-14.)  Plaintiff did not receive any HIV medications on March 7, 2009, because Defendant Subhash had discontinued them.  (Pl's. Aff. ¶¶ 15-16; Pl's. Exhibit C Medication Administration Record (MAR), p. 3C; Pl's. Exhibit D (Physician's Orders).)  Plaintiff immediately (March 7, 2009) submitted a grievance about the discontinuance of his HIV medications.  (Pl's. Exhibit A.)  In that grievance Plaintiff explicitly mentions the previous

14

grievance as the reason for the medications being discontinued. (Id., p. 2A; Pl's Aff. ¶¶ 18-20.)

A jury could find that Plaintiff did file a grievance on or about March 5, 2009, based on Plaintiff's testimony, (Pl's Aff. ¶ 13), the mention of that grievance in the March 7, 2009, grievance, (Pl's Exhibit A), and the fact that periodically missing doses of HIV medication is a serious matter (Pl's Aff. ¶¶ 5, 22.) [footnote omitted], that would compel a prisoner to file a grievance, (Pl's Aff. ¶¶ 12-13.)

Furthermore, Plaintiff's causation evidence, pages 10-11, infra, is particularly damning for Defendant, and would support the inference that something other than medical judgment prompted him to discontinue Plaintiff's HIV medications.

(Id. at 5-6).

The plaintiff's Response further emphasizes his belief that he need not demonstrate actual physical injury in order to succeed with his retaliation claim. Rather, the plaintiff states that "the material issue is whether being denied HIV medications would deter a prisoner of 'ordinary firmness' from filing grievances, i.e., 'chill' the exercise of that protected right." (Id. at 6)(citing Baltimore Sun Co. v. Ehrlich, 437 F.3d 410, 416 (4th Cir. 2005)). The plaintiff adds, "[t]he adversity does not have to actually prevent the exercise of the protected right, it is enough that the adversity was intended to interfere with the exercise of the right." Perry v. Sinderman, 408 U.S. 593, 597 (1972); Hudspeth v. Figgins, 584 F.2d 1345, 1348 (4th Cir. 1978). (Id.)

The plaintiff's Response further asserts that, if he does have to demonstrate that he has been damaged by the discontinuation of

his HIV medication, he can do so.  The plaintiff asserts that,
because his disease is in the asymptomatic stage (which, the
plaintiff offers, is the second stage of the disease), his negative
viral load is not an indicator of the status of the disease.  The
plaintiff asserts that, in the asymptomatic stage, the virus
migrates from the bloodstream to the lymph nodes and, thus, the
virus will not be as detectable in the bloodstream.  The plaintiff
further asserts that "[t]racking the infected individual's CD4 [or
T-helper] cell count is one of the most accurate measures of the
course of the disease." (ECF No. 80 at 8 and Ex. F)(citing Bragdon
v. Abbott, 524 U.S. 624, 634-35 (1998)(citing HIV medical
literature)).

  The plaintiff's Response further states:

     Defense Counsel points to his exhibits showing that
  Plaintiff's viral load remained stable despite the three-
  day discontinuation of his HIV medications (# 76 Resp. to
  Order at 3 (citing Def's. Exhs. 6, E, F).)  However,
  Plaintiff is obviously in the asymptomatic phase of HIV
  infection during which the virus is concentrated in the
  lymph nodes - not the blood - and "[t]racking the
  infected individual's CD4 cell count is one of the most
  accurate measures of the course of the disease."
  (Bragdon, 634-35).  "'What is more important than any
  single value is the pattern of CD4 counts over time.'"
  See page 8 n.9, supra (quoting Font v. Comm'r of Soc.
  Sec. Admin.)  As explained below, despite Plaintiff's
  stable viral load (in his blood), he experienced a
  precipitous 60% drop in CD4 count shortly after the
  three-day discontinuance of his HIV medications.

     On March 19, 2009, nine days after the three-day
  discontinuance, Plaintiff's CD4 count was a robust **869** (#
  59, Memo. in Support, Exh. 6, p.1)[FN 10], but on July
  22, 2009, his CD4 count had plummeted to a dangerously
  low **344** (# 76 Resp. to Order, Exh. E, p.1) - a decline of

60% in just four months. [FN 11]

[FN 10 - Plaintiff's CD4 count *before* the three-day
discontinuance is not in the record.]

[FN 11 - <u>Font v. Comm'r of Soc. Sec. Admin.</u>, 2009 U.S.
Dist. LEXIS 26842 __ n.26 (D. N.J. Mar. 31, 2009)("'. .
. The CD4 count is most useful when it is compared with
the count obtained from an earlier test . . . . What is
more important than any single value is the pattern of
CD4 counts over time.'"); <u>Rivera v. Barnhart</u>, 423 F.
Supp.2d 271, 275 n.2 (S.D.N.Y. ("' . . . . The body
starts to get more frequent common infections at around
a count of 400 . . . .'") Both citations are quoted in
full at page 8 n.9, <u>supra</u>.]

     Six months later, on January 13, 2010, Plaintiff's
CD4 count had improved somewhat to **480**, (# 76, Resp. to
Order, Exh. F, p.1).  However, that is still just 55%
of his CD4 count (**869** on March 19, 2009, (# 59, Memo. in
Support, Exh. 6, p.1), and represents an absolute decline
of **389** cells/mm$^3$ (µL) of blood, (<u>Bragdon</u>, 636).

     Plaintiff need not show a physical injury to prevail
on his retaliation claim.  Nonetheless, should the Court
find that injury is relevant to summary judgment, the
foregoing creates a triable issue of fact as to the cause
of Plaintiff's precipitous drop in CD4 count.

     A rational jury could find, or this Court could
determine as a matter of law, that Defendant's three-day
discontinuance of Plaintiff's HIV medications was
sufficiently adverse to chill the First Amendment right
of Plaintiff to file grievances.

(ECF No. 80 at 9-10).

     Finally, the plaintiff's Response points out that his
medication was discontinued on March 6, 2009, one day after the
alleged filing of the first grievance. (<u>Id.</u> at 10). The plaintiff
further asserts that the discontinuation of all of his HIV
medications occurred a day after the three medications had been re-
ordered. (<u>Id.</u> at 11).

The plaintiff further notes that the discontinuation of his HIV medications occurred five months after the last blood test results showing a negative viral load had been produced and, in that time frame, the three medications had been re-ordered three times. (Id.) Thus, the plaintiff argues that the proximity of the discontinuation of the medications to the filing of the grievance, and the seemingly arbitrary timing of the discontinuance in relation to the test results showing a negative viral load, support a finding that the decision to discontinue the medications was driven by and in retaliation for the filing of the grievance. (Id.)

The plaintiff further asserts that the defendant's conduct "easily fits within the deliberate indifference standard." (Id. at 12)(citing Farmer v. Brennan, 511 U.S. at 835)("[D]eliberate indifference entails something *more than* mere negligence, [but] is satisfied by something *less than* acts or omissions for the very purpose of causing harm or with knowledge that harm will result." (emphasis added)).  The plaintiff asserts that, based upon the facts presented, a rational jury could find that the defendant was deliberately indifferent to the plaintiff's HIV infection.  (Id.)

The plaintiff has provided his own affidavit with his Response.  The plaintiff's affidavit states in pertinent part:

> 3.    After Hurricane Katrina hit New Orleans, I moved to West Virginia, where I came under the medical care of Dr. Sewaray (sp?), a specialist in Morgantown, West Virginia.

18

4.   Dr. Sewaray continued to treat my HIV infection with Lexiva, Norvir and Truvada.

5.   Dr. Sewaray told me it was very important to always take each of the medications regularly at the prescribed times; if I missed a dose, the virus would become resistant to that drug and the triple-drug combination would be less effective in preventing my death.

                              * * *

10.   [Once at MOCC], [h]owever, periodically a dose of one of those medications would be missing when my pills were dispensed at Pill Call.

                              * * *

12.   Periodically missing dosages of Lexiva, Norvir or Truvada greatly concerned me because of what Dr. Sewaray had told me, *see* ¶ 5, *supra*.

13.   Therefore, on or about March 5, 2009, I filed a grievance about the periodically missing dosages of my HIV medications.

14.   I requested a copy of that grievance from prison officials but have not received it.

15.   On March 7, 2009, I did not receive any HIV medications.

16.   On March 7, 2009, the Pill Call Nurse told me that Dr. Subhash (*i.e.*, Defendant Subhash) had discontinued my HIV medications.

17.   I immediately (March 7, 2009) filed a grievance (09-MOCC-PA-52) about Defendant Subhash discontinuing my HIV medications.

18.   **Exhibit A** attached hereto is a true copy of that grievance (09-MOCC-PA-52).

19.   The handwritten second page ("Greavance on Dr. Subhash Gajendragadkar 3/7/09" (sic)) was included with the initial grievance (09-MOCC-PA-52) and at each stage thereafter.

                              19

20.   That handwritten page explicitly complains that:

> . . . . He took me off [my HIV meds] because
> I greaved [sic; grieved] him because he keeps
> forgetting to refill them and I would miss
> taking 1 of them I take 3 . . . . I guess this
> doctor [Defendant Subhash] knows nothing about
> them [*i.e.*, HIV meds] at all other wise he
> would not be playing with my life because he
> has vengefull [sic; vengeful] anger over the
> greavance [sic; grievance] I put in because of
> the meds he did not take me off till [sic;
> until] the greavance [sic; grievance] I put in
> on him the day I got it [*i.e.*, the grievance]
> back the next day he took me off them . . . .
> (sic).

(ECF No. 80 at 14-16 and Ex. A).

The affidavit then discusses other documents that the plaintiff has provided to support his claim. These documents include excerpts from the *Physicians' Desk Reference* which indicate that the amount of HIV virus in the blood can increase if one or more of the three medications, Norvir, Truvada and Lexiva, are stopped, even for a short time. (<u>Id.</u> at 16, ¶¶ 21-22 and Ex. B). The documents provided by the plaintiff further indicate that the three medications were re-ordered for the plaintiff on March 4, 2009, only to be discontinued on March 7, 2009. (<u>Id.</u> at 17, ¶¶ 24-27 and Exs. C & D). Finally, the plaintiff has attached an excerpt from an encyclopedia about HIV treatment and an excerpt from <u>Bragdon v. Abbott</u>, 524 U.S. 624 (1998), a case filed under the Americans with Disabilities Act, that discusses the development and treatment of HIV. (<u>Id.</u> at 18 and Exs. E & F).

The defendant's Reply

On February 2, 2011, the defendant filed a Reply to the plaintiff's Response to the Motion for Summary Judgment (ECF No. 81).  In the Reply, the defendant first asserts that a complete copy of plaintiff's medical records for the operative time period was ordered to be produced by the court and, thus, became a part of the record upon production.  (Id. at 1-2).  The defendant further asserts that, "as a part of the record in this case, the documents may be relied upon by a party seeking a Motion for Summary Judgment."  (Id. at 2).

The defendant's Reply further asserts:

> Plaintiff cannot produce admissible evidence to establish his allegation of retaliatory conduct by Dr. Subhash or deliberate indifference by Dr. Subhash to a serious medical need of the plaintiff.  No admissible evidence has been offered by plaintiff to support his claim other than his self-serving Affidavit.

(Id. at 2-3).  The defendant asserts that the plaintiff has still not produced a copy of the March 5 grievance.  The defendant further states:

> Another break in the causal connection that plaintiff seeks to establish in his claim of retaliation is the fact that the physician's orders attached to the Memorandum as Exhibit 3 show that the order to discontinue the HIV medications was made at 1250 on March 6, 2009.  Mr. Best's allegation is that he filed a grievance with the prison authorities on March 5, 2009. He has offered no proof and can offer no proof that the grievance he allegedly filed on March 5, 2009, was given to Dr. Subhash so that he would be aware of said grievance when he issued the discontinuance order on March 6, 2009, at 1250.

Exhibit 3 also makes clear the doctor's reasoning that he was discontinuing the anti-viral medications because the viral load had been negative for more than one year.  Dr. Subhash has submitted four separate articles to the Court which support interruption of HIV medications.  We have also illustrated to the Court in the Memorandum of Law the various blood tests showing the negative viral load before and after discontinuance of the medications.

In response to the Motion for Summary Judgment and the statements contained in the medical records, the plaintiff offers page after page of what is his opinion as to HIV, its characteristics and its treatments.  In addition, he has provided copies of books and other resources which he claims support his position.

None of the "evidence" and "testimony" offered by Mr. Best is admissible.

(Id. at 4).

The defendant further asserts that the plaintiff's own opinion concerning his treatment falls outside the scope of Rules 701 and 702 of the Federal Rules of Evidence, because he is a lay witness who is attempting to give opinions based upon scientific, technical or other specialized knowledge.  (Id.)  The defendant further contends that Rule 702 requires him to give such testimony by means of expert opinion, and that the plaintiff has not offered the testimony or opinion of a single expert.  (Id.)  The defendant further states:

Although he gives hearsay testimony concerning alleged statements by a medical doctor prior to his incarceration with reference to interruption of HIV treatment, he has offered no other Affidavit or other evidence of any medical provider to support his assertions in this case that his HIV anti-viral treatment cannot be interrupted.

(Id. at 4-5).

22

The defendant further contends that "damage must be shown in order for this Court to find that the conduct of Dr. Subhash rose to deliberate indifference." (<u>Id.</u> at 5).  The defendant adds:

> Suffice it to say, there is no conduct of Dr. Subhash which would shock the conscience of the Court when the evidence establishes that no harm was done to Mr. Best when his medications were interrupted.  The medical statements contained in the medical records of Mr. Best and as supported by the articles submitted in response to the Order of the Court show that Mr. Best can have his treatment interrupted.  Mr. Best's opinion and the hearsay statement of a nameless doctor cannot be relied upon by Mr. Best to establish a genuine issue as to any material fact.

(<u>Id.</u>)

## ANALYSIS

The defendant contends that he is entitled to summary judgment on both of the plaintiff's claims because there is an absence of evidence to demonstrate a genuine issue of material fact.  The defendant further asserts that the plaintiff has provided no testimony or evidence to support his claims, other than a self-serving affidavit.

In <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986), the Supreme Court made clear that neither a party moving for summary judgment, nor the party opposing such a motion, must provide supporting affidavits.  Rule 56 of the Federal Rules of Civil Procedure has been amended several times since the <u>Celotex</u> decision, including amendments that took effect on December 1, 2010.  The text of the current rule provides in pertinent part:

23

**(c) Procedures.**

> **(1) *Supporting Factual Positions.*** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> **(2) *Objection That a Fact is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> **(3) *Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.

Fed. R. Civ. P 56(c).

The plaintiff's affidavit and other documents submitted with his Response to the Motion for Summary Judgment are acceptable documents for the court to consider in support of the plaintiff's factual position, to the same extent that the documentation submitted by the defendant in support of his position, which includes no affidavit, may be considered by the court in ruling on

24

the motion.   The plaintiff has provided excerpts of his medical records, which are statements for the purposes of medical diagnosis or treatment, and thus, are exceptions to hearsay under Rule 803(4) of the Federal Rules of Evidence.   The plaintiff has also provided excerpts from authorities that may be considered learned treatises on the diagnosis and treatment of HIV, and the efficacy of medications used in such treatment, and would, thus, be exceptions to hearsay under Rule 803(18) of the Federal Rules of Evidence. The undersigned will further address the defendant's specific objections to the evidence offered by the plaintiff to support his factual position when addressing the individual claims below.

**A.   The plaintiff's retaliation claim.**

The defendant takes issue with the fact that the plaintiff has not produced a copy of the March 5 grievance.   Either party may subpoena a copy of the grievance from the West Virginia Division of Corrections, which is not a party herein, or establish the non-existence of the March 5 grievance.   Furthermore, the plaintiff clearly refers to the March 5 grievance in the March 7, 2009 grievance, which he has produced.   The defendant has conceded that, at least for the purpose of this motion, a grievance against Dr. Subhash was filed in early March of 2009.   (ECF No. 59 at 7-8).

Having already found that the plaintiff's action in filing a grievance can be construed as protected conduct under the First Amendment, see Fisher, *supra*, 2010 WL 3603495 at *8, the

25

undersigned proposes that the presiding District Judge **FIND** that the plaintiff has met the first element of a retaliation claim.

The undersigned further proposes that the presiding District Judge **FIND** that a reasonable juror could find that the defendant's action in discontinuing all of the plaintiff's HIV medications constitutes an adverse action against the plaintiff. Furthermore, this adverse action occurred within close proximity of time to the filing of the plaintiff's grievance concerning the failure to receive all of his HIV medications, one day after the medications had been renewed, and five months after the last lab report. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that a reasonable juror could find that the defendant's conduct in discontinuing the plaintiff's HIV medication, immediately after the filing of a grievance concerning the failure to receive his HIV medications as ordered, would likely deter a person of ordinary firmness from engaging in the filing of further grievances. The undersigned further proposes that the presiding District Judge **FIND** that there is a genuine issue of material fact concerning the plaintiff's First Amendment retaliation claim against the defendant and, therefore, the defendant is not entitled to judgment as a matter of law on that claim.

**B.   The plaintiff's deliberate indifference claim.**

As noted above, a plaintiff must establish both the objective and subjective components of a deliberate indifference claim.

26

There is no doubt that the plaintiff's HIV is a condition that has been diagnosed by a physician as mandating treatment, and, thus, is a serious medical need.  Turning to the subjective component, the plaintiff must be able to show that, by discontinuing the plaintiff's HIV treatment with the three medications, the defendant actually knew of a risk of harm to the plaintiff, and disregarded that known risk.

The plaintiff has provided authority from the *Physicians' Desk Reference* indicating that the three drugs used in the treatment of his HIV should not be stopped for even a short time because the amount of virus in the blood could increase, and the virus may become resistant to the drugs and become harder to treat.  (ECF No. 80, Ex. B).  The plaintiff has also provided an excerpt from the *World Book Encyclopedia* discussing how HIV affects the body and the accepted treatments for HIV.  This authority discusses how HIV infects certain white blood cells, in particular, T-helper or CD4 cells.  (Id., Ex. E).

The plaintiff has also cited to a federal Americans with Disabilities Act case which contains a discussion and citation to medical references concerning the infection of CD4 or CD4+ cells by the HIV virus.  This authority states that "tracking the infected individual's CD4+ cell count is one of the most accurate measures of the course of the disease."  Bragdon v. Abbott, 524 U.S. 624, 634 (1998).  The plaintiff has also attached excerpts from his

medical records showing that, within four months of the interruption of his HIV treatment with the three drug cocktail, his CD4 cell count dropped precipitously (approximately 60%).  Based upon the decline in his CD4 cell level, the plaintiff asserts that he can show actual harm from the discontinuation of his HIV treatment, even for a short period of time, and that the defendant disregarded this risk of harm.

The defendant asserts that, because the plaintiff has not provided expert testimony, there is an absence of evidence to support his claim.  The defendant further asserts that he relied upon several studies involving structured treatment interruption ("STI"), or interruption of antiretroviral therapy, for HIV patients.  The defendant has produced abstracts from those studies.

The undersigned notes that one of the studies cited by the defendant concluded that STI was not recommended as part of routine clinical care of HIV patients, and that prospective studies were needed to assess the risks and benefits of such a strategy.  (ECF No. 76, Ex. A).  The undersigned further notes that the defendant has not provided his own affidavit concerning the basis for his decision to interrupt the plaintiff's treatment, or any other expert testimony concerning the appropriateness of such a decision; nor has the defendant demonstrated an absence of evidence to support a finding that the plaintiff's severe decline in CD4 cell count resulted from the interruption of the plaintiff's HIV

28

treatment and that such a result was a known risk thereof.

The evidence provided by the plaintiff is sufficient under Rule 56(c) to establish the presence of a genuine dispute as to whether the defendant acted with deliberate indifference to the plaintiff's serious medical need.  Based upon the evidence before this court, taken in the light most favorable to the plaintiff, the undersigned proposes that the presiding District Judge **FIND** that a reasonable juror could find that the defendant knew of and disregarded a known risk of actual harm to the plaintiff when he discontinued the plaintiff's HIV treatment.  Thus, the undersigned further proposes that the presiding District Judge **FIND** that there is a genuine issue of material fact concerning the plaintiff's Eighth Amendment claim of deliberate indifference to a serious medical need, and that the defendant is not entitled to judgment as a matter of law on that claim.

**<u>RECOMMENDATION</u>**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** the defendant's Motion for Summary Judgment (# 58).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil

29

Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to opposing counsel and Chief Judge Goodwin.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Plaintiff and to transmit it to counsel of record.

| | |
|---|---|
| March 3, 2011 | Mary E. Stanley |
| Date | Mary E. Stanley |
| | United States Magistrate Judge |